IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**FILED**

04 MAR 15 PM 1: 53

CHRISTIE'S INC. and CHRISTIE'S GREAT
ESTATES, INC.,

      **Plaintiffs,**

**vs.**

                            **No. CIV 03-1078 RB/RLP**

GREAT ESTATES AUCTION COMPANY,
BUSINESS STARTERS PUBLISHING, INC.
and 4 K & D CORPORATION,

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Doc. No. 6),

filed on October 29, 2003.  Having reviewed the submissions of the parties and the relevant law,

the Court finds that the motion is well-taken and should be granted.

## I. Background

    On September 16, 2003, Plaintiffs filed their complaint for infringement of Christie's

federally registered marks under the Trademark Act of 1946 (Lanham Act), as amended, 15

U.S.C. § 1501 *et seq.*, specifically, 15 U.S.C. §§ 1114(1) and 1125(a).  Plaintiffs also allege

claims under New Mexico's Unfair Practices Act, N.M.Stat.Ann. § 57-12-1 *et seq.*, and



trademark infringement under common law.  Pursuant to Rule 12(b)(2) of the Federal Rules of Evidence, Defendants move to dismiss for lack of personal jurisdiction.

## II. Facts

Plaintiff, Christie's Inc., is a corporation organized and existing under the laws of the State of New York.  Compl. ¶ 7.  Plaintiff, Christie's Great Estates Inc., (hereinafter "Christie's Great Estates") is a wholly-owned subsidiary of Christie's Inc. with its principal place of business in the State of New Mexico.  *Id.* ¶ 8.  Christie's Great Estates has distributed luxury real estate magazines and marketed luxury real estate and related services since 1987.  *Id.* ¶ 1.  Along with its corporate parent, Christie's Inc., Christie's Great Estates owns the intellectual property rights to the federally-registered marks, Great Estates and Christie's Great Estates.  *Id.* ¶ 2.  Plaintiffs contend that the marks, Great Estates and Christie's Great Estates, are distinctive of Plaintiffs' luxury real estate goods and services.  *Id.*  Plaintiffs further claim these marks are leading brands in the global luxury real estate arena.  *Id.*

Defendant, 4 K & D, is a corporation organized and existing under the laws of the State of North Carolina.  *Id.* ¶ 11.  Great Estates Auction Company (hereinafter "GEA"), is a company organized and existing under the laws of the State of North Carolina.  *Id.* ¶ 9.  GEA maintains its principal place of business in Charlotte, North Carolina.  DeVine Aff. ¶ 4.  Additionally, 4 K & D Corporation does business as GEA.  Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss 2 ¶ 1.  GEA has been in the business of auctioning high end residential properties since October of 1999.  DeVine Aff. ¶ 7.  Defendant, Business Starters Publishing Inc. (hereinafter "BSP"), is a

corporation organized and existing under the laws of the State of North Carolina. *Id.* ¶ 10. BSP is an active holding company used by GEA to place its advertisements in various publications. *Id.*

On or about September 17, 1999, Plaintiffs learned Defendants were using the mark, Great Estates Auction Company. *Id.* ¶ 35. Plaintiffs claim Defendants are attempting to create a false association with Plaintiffs' goods and services. *Id.* According to Plaintiffs, they have demanded Defendants cease and desist from using their Great Estates marks, or similar marks, on at least three separate occasions, from September 21, 1999 to December 6, 1999. *Id.* ¶ 36.

Plaintiffs also allege that, on December 16, 1999, the United States Patent and Trademark Office (hereinafter "USPTO") refused to register Defendants' mark, Great Estates Auction Company. *Id.* ¶ 37. Plaintiffs claim the USPTO found Defendants' mark likely to cause confusion with Plaintiffs' previously registered Great Estates mark. Plaintiffs claim USPTO opined Plaintiffs' Great Estates mark and Defendants' Great Estates Auction Company mark both presented very similar commercial impressions. Additionally, the USPTO found Plaintiffs' real estate goods and services closely related to Defendants' proposed real estate services. *Id.* Therefore, on March 28, 2001, Defendants abandoned their application to register the mark, Great Estates Auction Company. *Id.* ¶ 39. Despite these failed attempts to register their mark, Plaintiffs contend Defendants continue to use the Great Estates Auction Company mark in connection with their real estate services. *Id.* ¶ 40.

3

### III. Standard of Review

The standard governing a motion to dismiss for lack of personal jurisdiction is well-settled in the Tenth Circuit. When the Court's jurisdiction is contested, Plaintiffs bear the burden of proving jurisdiction exists. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citing *McNutt v. General Motors*, 298 U.S. 178, 189 (1936)). In the preliminary stages of litigation, however, Plaintiffs' burden is light. *Id.* (citing *Doe v. National Medical Servs.*, 974 F.2d 143, 145 (10th Cir. 1992)).

When, as here, a Court rules on a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Wenz*, 55 F.3d at 1505 (quoting *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984)). If the parties present conflicting affidavits, all factual disputes must be resolved in Plaintiffs' favor. *Id.* "However, only the well pled facts of Plaintiffs' complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Id.* (citing *Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987)). In order to overcome a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating "that the presence of some other considerations would render jurisdiction

4

unreasonable." *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

## IV. Discussion

Defendants contend they are not subject to the Court's jurisdiction for the following reasons: (1) BSP is a holding company used solely as an advertising agency to place GEA advertisements in various publications; (2) BSP does not have offices, employees, or agents in New Mexico; (3) GEA does not have offices, employees, or agents in New Mexico; (4) GEA has never sold property in New Mexico; (5) GEA has never sold property to New Mexico residents; and (6) GEA has never advertised in a New Mexico publication.

Plaintiffs counter Defendants are subject to the Court's jurisdiction because Defendants engage in widespread national and regional advertising, actively solicit potential bidders and sellers of high-end real estate in New Mexico through their Internet website, and because Defendants' advertising has netted seven potential customers which are residents of New Mexico.

Personal jurisdiction exists if a party has been properly served and has sufficient contacts with the forum to satisfy procedural due process. *Packerware Corp. v. B & R Plastics, Inc.*, 15 F.Supp.2d 1074, 1076 (D. Kan. 1998). Defendants are amenable to process in a federal question case if the federal statute authorizes service of process on them or if they "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." *Id.* (quoting FED. R.CIV. P. 4(k)(1)(A)). Since 28 U.S.C. §§ 1338, 1331 and 15 U.S.C.

5

§ 1121 do not authorize service of process on Defendants, the Court must determine whether the Defendants are subject to the personal jurisdiction of a New Mexico state court. *See id.*

New Mexico's long-arm statute asks: (1) whether the acts of Defendants are specifically set forth in this state's long-arm statute; (2) whether Plaintiffs' claim arises out of and concerns such alleged acts; and (3) whether the Defendants' acts establish minimum contacts to satisfy constitutional due process concerns. N.M.Stat.Ann. § 38-1-16 (Michie 1978); *CABA Ltd. Liability Co. v. Mustang Software, Inc.*, 127 N.M. 556, 561, 984 P.2d 803, 808 (N.M. Ct. App. 1999) (citing *Doe v. Roman Catholic Diocese of Boise, Inc.*, 121 N.M. 738, 742, 918 P.2d 17, 21 (N.M. Ct. App. 1996). The New Mexico long-arm statute allows the Court to exercise personal jurisdiction over a nonresident defendant to the fullest extent allowed by the United States Constitution. *United Nuclear Corp. v. Gen. Atomic Co.*, 91 N.M. 41, 42, 570 P.2d 305, 306 (1977). Therefore, the Court need only determine whether exercising jurisdiction over Defendants is consistent with the Due Process Clause.

In a federal question case, the Due Process Clause is derived from the Fifth Amendment to the United States Constitution. *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). However, although the Court must examine due process in light of the Fifth Amendment rather than the Fourteenth Amendment because the case arises under federal question jurisdiction, the standards applied are the same as those in a Fourteenth Amendment analysis. *See Packerware Corp.*, 15 F.Supp.2d at 1077.

6

Under the Due Process Clause of the Fourteenth Amendment, Defendants must have certain minimum contacts with the State of New Mexico such that the maintenance of this action does not offend "traditional notions of fair play and substantial justice." *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). Personal jurisdiction may be based on either general or specific jurisdiction. *Id.*

General jurisdiction is met when a defendant's contacts with the forum state are so continuous and systematic that the state may exercise personal jurisdiction even when the claims are unrelated to the defendant's contacts with the forum state. *Id.* However, because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent quantitative test before asserting general jurisdiction over a non-resident defendant. *OMI Holdings, Inc.*, 149 F.3d at 1091. In the instant case, Plaintiffs' submissions are insufficient to show the type of continuous and systematic contacts with the State of New Mexico that warrants an exercise of general jurisdiction over Defendants by this Court. Accordingly, Plaintiffs' choice of forum must rest on a prima facie showing that the requirements for an exercise of specific jurisdiction have been satisfied.

Specific jurisdiction exists when a defendant purposely avails itself of the privilege of conducting activities within the forum state and the claims against it arise out of those contacts. *Id.* Specific jurisdiction has two prongs. Under the first prong, the Court considers whether Defendants purposefully directed their activities towards New Mexico's residents. This does not

7

mean Defendants intentionally contacted a person who happened to be residing in New Mexico. Rather, the focus is on whether the transaction at issue amounts to a purposeful decision by Defendants to participate in the local economy and to avail themselves of the benefits and protections of New Mexico law. *FDIC v. Hiatt*, 117 N. M. 461, 464, 872 P. 2d 879, 882 (1994).

The second jurisdictional prong requires the forum states' exercise of personal jurisdiction over Defendants to be fair and reasonable in light of the circumstances surrounding the case. *OMI Holdings, Inc.*, 149 F. 3d at 1091. In determining whether the exercise of jurisdiction is so unreasonable as to offend traditional notions of "fair play and substantial justice," the Court considers the following factors: (1) the burden on Defendants; (2) the State of New Mexico's interest in adjudicating the dispute; (3) Plaintiffs' interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 1095 (citing *Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 113 (1987).

Construing the evidence in the light most favorable to Plaintiffs, the Court finds Plaintiffs failed to make a prima facie showing that would subject Defendants to the Court's jurisdiction. With regard to the first jurisdictional prong, Defendants have not purposely directed their activities toward New Mexico residents. Plaintiffs do not contradict Defendants' claim that BSP is a holding company used exclusively by GEA to place GEA advertisements in various publications. Plaintiffs do not dispute Defendants' assertion that GEA does not maintain any

8

offices, employees, or agents in New Mexico. It is also undisputed that GEA has never been the subject of any litigation in New Mexico, never conducted an auction of property located in New Mexico, and never auctioned property owned by a resident of New Mexico.

Plaintiffs' contention that Defendants have specifically targeted New Mexico residents in their national and regional advertising campaign is misguided. Defendants have never advertised their services in a local trade journal in New Mexico. Defendants have never featured a New Mexico property in any of its advertisements. The evidence shows Defendants' selected publications span several states not just New Mexico. Defs.' Ex. A; DeVine Aff. ¶ 17. The fact that one of Defendants' selected publications displayed luxury real estate located in New Mexico does not alter the analysis. Moreover, the "mere placement of advertisements in nationally distributed papers or journals does not rise to the level of purposeful contact with a forum required by the Constitution in order to exercise personal jurisdiction over the advertiser." *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.*, 17 F.3d 1302, 1305 (10th Cir. 1994).

Plaintiffs point to Defendants' website, www.greatestatesauction.com, as an additional basis to establish Defendants' purposeful contact with residents of New Mexico. Plaintiffs argue Defendants operate an interactive website by soliciting registration and contact information from visitors, offering the option to place on-line bids for listed properties, and framing other interactive websites that conduct business online with New Mexico residents. To support this contention, Plaintiffs cite to the affidavit of Ms. Valaria DeVine, President of GEA and BSP. Ms. DeVine noted that GEA's website requires visitors to register and provide contact

9

information before viewing the contents of the website. DeVine Aff. ¶¶ 26-27. Ms. DeVine explained that the registration information is used to contact potential auction customers and bidders through the use of electronic mail. *Id.* Plaintiffs also cite to Ms. DeVine's deposition to support the contention that Defendants' website contained an option for visitors to place bids over the Internet on high-end properties. DeVine Dep. at 78-79. Plaintiffs finally cite to two websites, www.bidder-network.com and www.loopnet.com as evidence that Defendants framed other interactive websites. These two sites, according to Plaintiffs, allowed New Mexico residents to register and bid on a variety of items through online auctions.

The Court finds Defendants' website passive and insufficient to subject Defendants to the Court's jurisdiction. A passive website used primarily to post and distribute information which is accessible to users in different forums is insufficient to confer jurisdiction on the website's owner. *Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999). First, Defendants do not actively conduct business on the website and the website does not allow visitors to communicate with representatives of GEA. Although the website requires contact information before viewing, Defendants' website is used primarily to advertise GEA's services. In fact, of the 9,000 persons who have initiated contact with GEA since it began operations, only seven New Mexico residents have requested informational material. DeVine Supplemental Aff. ¶ 19. Secondly, GEA's Internet bidding option has never been used. Dep. of Valaria DeVine, 12/10/03, at 79:7- 79:15. Even if GEA's Internet bidding option was available, it is not accessible to the general public. This bidding option is only accessible to pre-approved auction

10

bidders. To gain approval the bidder must: (1) contact GEA by phone or in person; (2) attend a preview at the auction upon which the Internet bidder wishes to bid; (3) enter a purchase contract with GEA with a blank price term; (4) wire earnest money funds into GEA's attorney's escrow account; and (5) visit a secured site accessible only by a GEA issued password before making any bids. DeVine Supplemental Aff. ¶ 16. Finally, the two Internet sites that were framed on GEA's website were created by an unknown third party. Dep. of Valaria DeVine, 12/10/03, at 80:8-86:20. As soon as Defendants were made aware of this activity, the framed sites were removed. *Id.*

Plaintiffs also claim that, because seven New Mexico residents have sought detailed information directly from Defendants, Defendants have the requisite minimum contacts with the State of New Mexico to subject them to the Court's jurisdiction. The Court finds Plaintiffs' argument unpersuasive. Defendants did not directly solicit any business from the seven New Mexico residents. Rather, each resident initiated contact with Defendants to request information concerning specific auctions. With the exception of one resident, Defendants have not communicated with any of the seven after the initial inquiry. Furthermore, as a group, the seven residents contacted represent less than one tenth of one percent of all persons contacting Defendants for informational materials. DeVine Supplemental Aff. ¶ 19. Defendants' single mailing to five New Mexico residents is insufficient to establish Defendants purposefully availed themselves of the benefits and protections of New Mexico law.

With respect to the second jurisdictional prong, the Court finds that Plaintiffs have not

11

identified a strong interest of the forum state in adjudicating the dispute, nor do they identify

any fundamental substantive social policy that would be advanced by litigating this case in

New Mexico. The practical burdens and inconveniences of litigating out of state appear to be

equal among the parties, and retention of the case on this Court's docket does not appear

necessary to bring about an efficient resolution of the controversy. Accordingly, Plaintiffs'

argument as to the reasonableness of this Court's exercise of jurisdiction over Defendants

is not sufficiently strong to overcome their infirm showing of minimum contacts.

## V. Conclusion

Defendants have not purposely availed themselves of the benefits and privileges of New

Mexico law. In addition, Plaintiffs' choice of forum is not fair and reasonable so as to comport

with traditional notions of "fair play and substantial justice." Therefore, the constitutional

prerequisites for this Court's exercise of personal jurisdiction over Defendants have not been

satisfied.

**THEREFORE,**

**IT IS ORDERED** Defendants' Motion to Dismiss (Doc. No. 6), filed on October 29,

2003, is **GRANTED.**


**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**


12